IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MELANIE D. OSTERHOUSE, DAVID OSTERHOUSE, JADON OSTERHOUSE, <br><br> Plaintiffs, <br><br> v. <br><br> GREGORY L. GROVER, PACCAR, INC., M.E.M.R., INC., RIGHTWAY DIESEL SERVICE, EATON CORPORATION, TRANSGUARD INSURANCE COMPANY OF AMERICA, INC., GENERAL MOTORS CORPORATION, <br><br> Defendants. | Case No. 3:04-cv-93-MJR |

**ORDER**

This matter is before the Court on the First Motion for Sanctions filed by the Defendants, Gregory L. Grover, M.E.M.R., Inc. (MEMR), and Transguard Insurance Company of America (Transguard), on February 9, 2006 (Doc. 166) and the Second Motion for Sanctions filed by Grover, MEMR, and Transguard, on February 9, 2006 (Doc. 167). For the reasons set forth below, the first motion for sanctions is **GRANTED IN PART and DENIED IN PART** (Doc. 166) and second motion for sanctions is **DENIED** (Doc. 167).

**BACKGROUND**

This case arises from a traffic accident that occurred on October 22, 2002 involving the Plaintiff Melanie Osterhouse's car and a truck driven by Defendant Gregory L. Grover. The Plaintiffs allege that an axle and wheels from the truck struck the car while the vehicles were traveling in opposite directions on Interstate 64 in Illinois. At the time, Melanie Osterhouse was 6 months pregnant. Shortly after the accident, Melanie Osterhouse gave birth to Jadon Osterhouse who suffers from a number of medical conditions. The Osterhouses allege, in part,

that these medical conditions are a result of the accident.

On January 19, 2006, the Defendants received the Plaintiffs' expert disclosures and reports. The disclosure identified 51 separate experts: 22 are treating physicians, 8 are treating organizations, 15 are other non-retained experts, and 6 are retained experts. The Defendants filed the pending motions on February 9, 2006[1] and generally object to the number of Plaintiffs' experts and argue that expert reports are required for each of the experts listed. On February 28, 2006, this Court held a hearing on the matters raised in the Defendants' motions.[2] At the hearing, the Plaintiffs withdrew the disclosure of treating organizations as experts (which included Barnes-Jewish Hospital, Missouri Baptist Medical Center, Washington University in St. Louis, St. Louis Children's Hospital, Charles County Infant & Toddlers Program, Civitas Medical Center, ProCare Pharmacy, and Nova Factor). The Plaintiffs also withdrew the disclosure of Melanie Osterhouse as a non-retained expert. The remaining expert disclosures are still under consideration.

## DISCUSSION

The Defendants seek sanctions pursuant to Federal Rule of Civil Procedure 37(a)(3) and (c)(1) which provide that evidence may be excluded at trial if an incomplete disclosure, as required by Rule 26(a), is made. Rule 26(a)(2) sets forth two types of expert disclosures: the

---

[1] Defendants Rightway Diesel Service joined the motions on February 10, 2006.

[2] At the hearing, three other motions were considered, a motion to stay discovery filed on February 17, 2006 by the Defendant Transguard Insurance Company (Doc. 173), a motion to strike the Defendants' motions for sanctions filed on February 23, 2006 by the Plaintiffs (Doc. 175), and a third motion for sanctions concerning the plaintiffs' retained experts filed by the defendants on February 9, 2006 (Doc. 168)  This Court denied without prejudice the motion to stay and denied as moot the motion to strike for reasons stated at the hearing.  The third motion for sanctions will be dealt with in a separate order.

Plaintiffs must disclose "the identity of any person who may be used at trial to present evidence under Rules 702, 703, and 705 of the Federal Rules of Evidence" pursuant to Rule 26(a)(2)(A); and, if the expert is "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony" the Plaintiffs also must provide an expert report pursuant to Rule 26(a)(2)(B). With respect to the non-retained experts listed by the Plaintiffs, the Defendants argue that expert reports must be prepared. Thus, the Defendants argue that each of the Plaintiffs' experts are "retained or specially employed." Each of the types of experts will be addressed in turn.

**NON-RETAINED TREATING PHYSICIANS.**

For each of these disclosures, the Plaintiffs provide the name, address, and telephone number of various treating physicians. The Plaintiffs also provide a paragraph long statement of each of the doctors' speciality, the type of services that the doctors performed for the Plaintiffs, what each doctor is expected to testify to, and the material relied on for their opinions. Each paragraph presupposes that doctors will express their opinions at their depositions (which have not been taken). The paragraphs also contain the following language: that each doctor "may be expected to testify on Plaintiffs' medical condition, including diagnoses; causation; prognoses; nature, extent and duration of the injury; past and future pain and suffering; past and future disability; necessity of medical treatment, past and future; and reasonableness and necessity of medical expenses in the past and future." None of these disclosures identify which Plaintiff, of the three, each doctor will be testifying about. None of these disclosures identify what opinions each doctor will express. None of these disclosures identify which specific documents each opinion relies on.

The Defendants argue that "[w]hen a treating physician is being tendered for the purpose of rendering opinions regarding an issue such as causation, that physician is, in fact being retained for the purpose of providing expert testimony" (Doc. 166 at p. 5). Further, the Defendants argued at the hearing that the disclosure of 51 experts is oppressive: that they should not be compelled to take the deposition of these witnesses in order to determine what their opinions may be. Thus, the Defendants argue, each of these experts should have provided an expert report pursuant to Rule 26(a)(2)(B) and the paragraph disclosure that is provided is inadequate. In response, the Plaintiff asserts that these experts are merely to be disclosed, per Rule 26(a)(2)(A), as they are not "retained or specially employed." In Musser v. Gentiva Health Services, 356 F.3d 751 (2004), the Seventh Circuit Court of Appeals expressly reserved the issue of whether an expert report is required in situations such as the one here:

> We need not reach the disputed issue of whether an individual who serves in the capacity of 'treating physician' (or any analogous position) may nonetheless be require to submit a report under Rule 26(a)(2)(B). It is clear that there is some expert testimony in the nature of the treating physician's testimony that does not require a report. But some district courts have suggested that if the Rule 26(a)(2)(A) testimony exceeds the scope of treatment and ventures into more general expert opinion testimony, a report may be necessary.
>
> Id. at 758 n.3 (citations omitted).

The Seventh Circuit cited two cases for this proposition, Zarecki v. National Railroad Passenger Corporation, 914 F.Supp. 1566 (N.D. Ill. 1996), and Wreath v. United States, 161 F.R.D. 448 (D. Kan. 1995). Zarecki dealt primarily with disclosure under Rule 26(a)(2)(A) and not directly with the necessity of an expert report. In Wreath, however, Magistrate Judge Newman stated that "when the physician's proposed opinion testimony extends beyond the facts made known to him

4

during the course of the care and treatment of the patient and the witness is specially retained to develop specific opinion testimony, he becomes subject to the provisions of" Rule 26(a)(2)(B). Thus, when a treating physician offers an opinion that goes beyond those related to his care and treatment of the Plaintiffs, he may need to provide an expert report.

This conclusion is echoed in Griffith v. Northeast Illinois Regional Communter Railroad Corp., ___ F.R.D. ___, 2006 WL 436114 (N.D. Ill. 2006). In this case, Magistrate Judge Brown considered the question of whether a party should provide an expert report for a treating physician.[3] The Plaintiff provided a cursory expert report that was deficient in a number of respects. The Court originally struck the expert disclosure as there was no showing that the doctor was a treating physician. In reconsidering the order striking, and upon some showing that the doctor was a treating physician, Judge Brown states:

> When a treating physician limits his testimony to his observation, diagnosis and treatment, there is no need for a Rule 26(a)(2)(B) report. In contrast, when a treating physician opines as to causation, prognosis or future disability, the physician is going beyond what he saw and did and why he did it. He is going beyond his personal involvement in the facts of the case and giving an opinion formed *because there is a lawsuit*. Often that opinion relies on information not part of the physician's personal knowledge or professional training . . . .

Id. at *4 (emphasis added).

But see McCloughan v. City of Springfield, 208 F.R.D. 236, 240-243 (C.D. Ill. 2002) (on a motion in limine, District Judge Richard Mills, Jr. held that a treating physician's testimony regarding causation, diagnosis, and prognosis does not necessarily require a previously

---

[3] The procedural posture of Griffith is not similar to the case at bar. In addition, the type of disclosure made in Griffith and the type of evidence relied on by Judge Brown are different from the evidence presented in this case.

submitted expert report). In further considering the purpose behind Rule 26(a)(2)(B) as noted in the Advisory Committee Notes to the 1993 Amendments, Judge Brown observed that:

> A Rule 26(a)(2)(A) disclosure, which requires only the identity of the person providing expert testimony, even when supplemented by the medical records, would provide no disclosure of those opinions. That is actually less information than the 'sketchy and vague' information that the Advisory Committee criticized.[4]
>
> Id. at *5.

The Advisory Committee Notes for the 1993 Amendments indicate that the Rule "imposed an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Thus, this purpose is in-line with the general purpose of discovery in Federal Courts: that evidence is readily exchanged in order to avoid so-called trial by ambush.

This Court will not find, however, that the plaintiffs must provide Rule 26(a)(2)(B) reports for these treating physicians as they are not "retained or specially employed." Thus, the sanctions contemplated by Rule 37 are not applicable. Each of the disclosures for these experts state that the doctors will provide testimony based on the medical records, testing, examinations that were performed during the treatment of a plaintiff and not necessarily in anticipation of litigation. There has been no showing that the plaintiffs solicited the services of any of the doctors solely because they intended to file suit or otherwise press their claims against the

---

[4] The Advisory Committee notes use the "sketchy and vague" language in a discussion of Rule 26(a)(2)(B). See also Salgado by Salgado v. General Motors Corporation, 150 F.3d 735, 742 n. 6 (7th Cir. 1998).

defendants.[5] The doctors' testimony regarding causation and/or prognoses also do not elevate these doctors to specially employed. It is not unheard of for a doctor, during the course of treatment, to elicit information and form an opinion about the processes of an injury, especially in the case of an automobile accident. It is also not unheard of for a doctor to form an opinion and inform a patient of the future ramifications of an injury or of the various treatment options available and their costs. Of course, whether or not these doctors will be allowed to offer their opinion testimony rests with the Trial Court. This Court merely finds that an expert report is not required pursuant to Rule 26(a)(2).

However, this Court is troubled by the number of these experts that the plaintiffs have disclosed and the position in which the defendants are now placed, especially in light of the full disclosure premise behind the Federal Rules on discovery and the deadlines in this case. From the disclosures, it is unclear which plaintiff the doctors will provide testimony for, or what they will testify to, besides the vague causation/prognoses language. As the defendants point out, they will be required to conduct lengthy and expensive depositions in order to determine what opinions these doctors might express and background information as to what qualifies any of them to be experts (in order to file <u>Daubert</u> motions).[6] There is no doubt that coordinating the schedules of twenty-two doctors and a half-dozen lawyers is no small feat – especially in light of the firm trial date in this matter and the limitations on discovery deadlines imposed by the Local Rules. It is clear that without some discovery into what these doctors may testify to, the

---

[5] This is, of course, unsurprising at this stage of discovery as the defendants have not had the opportunity to either tender discovery requests or depose these experts.

[6] This will be in addition to the plaintiffs' six specially retained experts and over a dozen other experts that the plaintiffs have identified.

defendants will be wholly unable to support any <u>Daubert</u> motion that they wish to file file before the Trial Court.  Indeed, the plaintiffs have opened the door to bearing the burden of providing more information than required by Rule 26(a)(2)(A) – even though the Rule only requires the plaintiffs to identify experts, the plaintiffs went beyond this by providing background information, the general areas that the doctors may testify to, and what documents or materials they will be relying on.

Thus, the disclosure of 22 treating physicians as experts and the expensive discovery that necessarily must be employed by the defendants to prepare for possible <u>Daubert</u> motions and cross-examination at trial places an undue burden and expense upon the defendants and is oppressive.  This burden is especially onerous as, depending on what each of the experts may testify to, the defendants will also be required to go through the expense of soliciting their own rebuttal experts.  Placing such a burden on the defendants alone is simply unfair and unjust.  In order to remedy this burden the following is hereby ORDERED:

1. The plaintiffs shall provide the defendants with the qualifications of these doctors that would qualify them as experts.

2. The plaintiffs shall provide the *specific and complete* opinions that these doctors will express and the *specific* bases for these opinions.

3. The plaintiffs also shall provide or refer to the specific medical reports or other evidence that these doctors relied on in rendering their opinions.

This remedy, which addresses the oppressive nature of the plaintiffs' disclosure, is not in the same category as sanctions; rather, these requirements are made pursuant to Rule 26(c).  The Court finds good cause to believe that the defendants require protection from oppressive and

unduly burdensome and expensive discovery. Justice requires that these methods be imposed to alleviate the burden placed on the defendants. Finally, if the information provided by the plaintiffs is insufficient and/or "sketchy and vague," the Court will entertain a motion to compel the plaintiffs to pay a portion of the depositions of these experts.

**NON-RETAINED TREATING ORGANIZATIONS**

At the hearing, the plaintiffs withdrew these organizations from their expert disclosure list.

**OTHER NON-RETAINED EXPERTS**

In this section of the plaintiffs' disclosures, they list a number of individuals including certain fact witnesses and other employees of the defendants, including Gregory L. Grover, a named defendant. At the hearing, the plaintiff indicated that these witnesses, who are primarily fact witnesses, were named because the plaintiff wanted to make sure that if they elicit opinion testimony at trial, such testimony will not be prevented by Rule 37. This Court is unaware of any Federal Rule or any rule of law that would prevent the plaintiff from identifying any person, including an opposing party, as an expert. The defendants' entire argument is that each of these witnesses should provide expert reports and that the failure to do so is fatal. What is missing, however, is any argument of how these witnesses are "retained or specially employed" such that a report is necessary.

At the hearing, the plaintiff withdrew Melanie Osterhouse as an expert witness (Tr p. 48). The plaintiff also stated that the following three witnesses, Brian Mixon, Kenneth Crain, and Danny Crain, "were included on the off chance if they give some opinion as to speed" (Tr. 49). The defendant, Gregory Grover, was listed because, in part, he may testify to "things that border

on opinion" as he did in his deposition (Tr. 50). With respect to David Plummer, Jacob Pickett, Tom French, David Ruff, Bobby Hibbs, Lyman Parsell, Travis Reidelberger, Nathan Holle, and James Krikie, who are all employees of one of the defendants, the plaintiff indicated that they may provide opinion testimony regarding the functioning of the truck at issue and trucks in general (Tr. 50-52).

None of these persons have been retained by the plaintiff or specially employed by the plaintiff such that an expert report is due. Further, it appears that any opinions they may express are a result of their involvement in the underlying facts of this case and their own observations and actions. As such, the plaintiffs are not required to provide an expert report and are only required to identify these persons. While the plaintiffs perhaps have been overly-cautious in naming these persons as experts, the defendants have cited to no law that would prevent the plaintiffs from doing so. In addition, unlike the doctors above, the defendants are in the best position to interview these persons and determine what opinion, if any, they may offer at trial.[7] If the defendants believe that these persons cannot be qualified to express an expert opinion, and not a lay opinion, they should file the appropriate motion with the Trial Court.

---

[7] The Court realizes that the defendants are separate and distinct entities whose interests may not be congruent. However, it appears that each of these witnesses will offer limited expert opinions, if any, that will not be burdensome to elicit. The Court also assumes that the parties will act cooperatively in sharing relevant information.

## CONCLUSION

For the foregoing reasons, the First Motion for Sanctions filed by the Defendants, Gregory L. Grover, M.E.M.R., Inc. (MEMR), and Transguard Insurance Company of America (Transguard), on February 9, 2006 is **GRANTED IN PART and DENIED IN PART** (Doc. 166) and the Second Motion for Sanctions filed by Grover, MEMR, and Transguard, on February 9, 2006 is **DENIED**  (Doc. 167).

**DATED: May 17, 2006**

**s/ Donald G. Wilkerson**
**DONALD G. WILKERSON**
**United States Magistrate Judge**
